RENDERED: MAY 26, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1035-MR

CHARLES G. MIDDLETON, III,
INDIVIDUALLY AND IN HIS CAPACITY
AS CO-EXECUTOR OF THE ESTATE
OF LAWRENCE J. MIDDLETON, SR.; AND
LAWRENCE J. MIDDLETON, JR.,
IN HIS CAPACITY AS CO-EXECUTOR OF
THE ESTATE OF LAWRENCE J.
MIDDLETON, SR.                                                    APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
                    ACTION NO. 16-CI-002566


COMMONWEALTH BANK AND TRUST
COMPANY, IN ITS CAPACITY AS
SUCCESSOR TRUSTEE FOR THE
LAWRENCE L. JONES, SR. TRUST UNDER
AGREEMENT DATED DECEMBER 28,
1933; AND PNC BANK, N.A., IN ITS
CAPACITY AS PREDECESSOR
TRUSTEE FOR THE LAWRENCE L. JONES, SR.
TRUST UNDER AGREEMENT DATED
DECEMBER 28, 1933                                                    APPELLEES

AND

CHARLES G. MIDDLETON, III,
INDIVIDUALLY AND IN HIS CAPACITY
AS CO-EXECUTOR OF THE ESTATE
OF LAWRENCE J. MIDDLETON, SR.;
CHARLES G. MIDDLETON, III, IN HIS
CAPACITY AS TRUSTEE OF THE KATHERINE
JONES SMITH TRUST U/W; AND
LAWRENCE J. MIDDLETON, JR.,
IN HIS CAPACITY AS CO-EXECUTOR OF
THE ESTATE OF LAWRENCE J.
MIDDLETON, SR.                                                          APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 16-CI-002566


COMMONWEALTH BANK AND TRUST
COMPANY, IN ITS CAPACITY AS
SUCCESSOR TRUSTEE FOR THE
LAWRENCE L. JONES, SR. TRUST UNDER
AGREEMENT DATED DECEMBER 28,
1933; AND PNC BANK, N.A., IN ITS
CAPACITY AS PREDECESSOR
TRUSTEE FOR THE LAWRENCE L. JONES, SR.
TRUST UNDER AGREEMENT DATED
DECEMBER 28, 1933                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE, JUDGES.

ECKERLE, JUDGE: These appeals arise from a judgment awarding attorney fees and a post-judgment order allowing the judgment creditor to attach trust assets belonging to the judgment debtor. In the first appeal, Charles G. Middleton, III and the Estate of Lawrence J. Middleton (collectively, "the Middletons") appeal from an order of the Jefferson Circuit Court awarding contractual attorney fees to Commonwealth Bank & Trust Company, in its capacity as successor trustee for the Lawrence Jones Middleton, Sr. Trust under agreement dated December 28, 1933, ("C.B.&T."). In the second appeal, the Middletons appeal from a post-judgment order of the Jefferson Circuit Court allowing C.B.&T. to attach assets of a separate trust of which Charles Middleton is both trustee and lifetime beneficiary.

For the following reasons, we conclude that the Trial Court applied the proper standard in determining the amount of reasonable attorney fees owed to C.B.&T. We further conclude that the Trial Court did not err in allowing C.B.&T. to attach Charles Middleton's beneficial interest in the separate trust in order to satisfy the judgment for attorney fees. Hence, we affirm in both appeals.

-3-

## I.    Facts and Procedural History

For purposes of this appeal, the following facts are relevant:  In 1933, Lawrence Jones, Sr., created an *inter vivos* trust ("the Trust") for the benefit of his three daughters and their descendants.  He established a similar trust for the benefit of his son, Lawrence Jones, Jr., and his descendants.  The Middletons are descendants of Lawrence Jones, Jr., who predeceased his father.

Throughout the years, there were ongoing issues involving the administration of the Trust.  In 2004, PNC Bank, N.A. ("PNC"), as trustee, instituted a declaratory judgment action in the Jefferson Circuit Court to determine, among other things, whether the descendants of Lawrence Jones, Jr., were included in the class of remainder beneficiaries under the Trust ("the 2004 Action").  The Middletons, as potential remainder beneficiaries, were named as parties to that action and eventually filed a counterclaim against PNC.  After several years, the parties entered into a Settlement Agreement and Release ("the Agreement"), stipulating that the Middletons were remainder beneficiaries under the Trust.

As part of the Agreement, the Middletons accepted a series of distributions in exchange for giving up their rights as potential remainder beneficiaries upon termination of the Trust.  In addition, the Middletons reserved their rights to maintain individual claims against PNC as Trustee.  As further consideration, the Agreement contained the following provision:

> Charles G. Middleton, III and Lawrence J. Middleton hereby covenant and agree to hold harmless and indemnify . . . [the Trust] . . . from any and all claims, causes of action, demands or suits of any kind arising directly or indirectly from any damages and/or claims asserted in Middleton v. PNC, including but not limited to, any claims for attorneys' fees and costs and any claims by other Defendants in Middleton v. PNC.

In 2007, the Middletons brought a separate action against PNC asserting claims for breach of fiduciary duties arising from its delegation of investment management and failure to supervise investments properly ("the 2007 Action"). The Middletons also asserted that PNC's conduct while managing the Trust amounted to other violations of Kentucky law, PNC's internal policies, and the requirements of the Trust itself. The Middletons contended that PNC's actions caused losses to the Trust's investment portfolio during the period of July 2001 through October 2007.

After protracted litigation, the Trial Court granted summary judgment to PNC on the claims raised in that action. On appeal, this Court affirmed, concluding that the Middletons failed to establish that they suffered any non-speculative injury caused by the alleged negligence of PNC and its investment manager, Parthenon, L.L.C. ("Parthenon"). *Middleton v. PNC Bank, NA*, No. 2012-CA-002142-MR, 2014 WL 5510872 (Ky. App. Oct. 31, 2014) (unpublished).

During the pendency of the 2007 Action, C.B.&T. became successor trustee of the Trust. In addition, while the 2007 Action was on appeal, Lawrence

Jones Middleton, Sr. passed away. Charles Middleton and Lawrence Jones Middleton, Jr., were appointed co-executors of the Estate of Lawrence Jones Middleton, Sr. In 2015, C.B.&T. sent the Middletons a letter and supporting affidavit setting forth the attorney fees and costs paid by the Trust in the 2007 Action, as provided under the Agreement. The Middletons thereafter denied any obligation to indemnify the Trust.

In 2016, C.B.&T. filed the current action to enforce the indemnity obligation. The matter proceeded to a motion for partial summary judgment on the issue of the Middletons' liability. The Trial Court granted the motion, concluding that the Agreement clearly required the Middletons to reimburse the Trust for all attorney fees, expenses, and costs paid on behalf of PNC in defending the 2007 Action. Because PNC prevailed, the Trial Court found that the Middletons were obligated under the Agreement to pay those fees and costs. Subsequently, C.B.&T. moved for summary judgment on damages, submitting affidavits showing that the Trust had expended $1,081,293.61 in attorney fees and costs during the PNC litigation and the indemnity action. The Middletons did not dispute the affidavits, and the Trial Court thereafter entered judgment in that amount with prejudgment interest.

On appeal, this Court affirmed the Trial Court's substantive rulings, but reversed on the award of attorney fees. *Middleton v. PNC Bank N.A.*, No.

-6-

2017-CA-001673-MR, 2019 WL 1224621 (Ky. App. Mar. 15, 2019)

(unpublished). In pertinent part, this Court held that any award of attorney fees is

subject to a determination of reasonableness by the Trial Court. *Id.* at *8 (citing

*Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991)). In the

absence of the necessary findings of reasonableness, this Court remanded the

matter for a new hearing and findings on that issue. To determine whether the

requested attorney fees are reasonable, this Court directed the Trial Court to

address the "well-established" factors, including:

> (a) Amount and character of services rendered.
>
> (b) Labor, time, and trouble involved.
>
> (c) Nature and importance of the litigation or business in which the services were rendered.
>
> (d) Responsibility imposed.
>
> (e) The amount of money or the value of property affected by the controversy or involved in the employment.
>
> (f) Skill and experience called for in the performance of the services.
>
> (g) The professional character and standing of the attorneys.
>
> (h) The result secured.

*Id.* at \*9 (citing *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 910 (Ky. App. 2015) (quoting *Axton v. Vance*, 207 Ky. 580, 269 S.W. 534, 536-37 (1925))).

On remand, the Middletons argued that they were entitled to a jury trial on the issue of reasonableness of the attorney fees. The Trial Court denied the motion, concluding that reasonableness is a question of law for the Court to decide. The Court also directed the Middletons to identify the specific expenses that were claimed to be unreasonable. In a separate order, the Trial Court granted C.B.&T.'s motion to exclude the Middletons' expert witness, finding that the reasonableness of attorney fees is a matter of law and not an appropriate topic for expert testimony. Finally, the Trial Court denied the Middletons' motion to apply the "lodestar" analysis in assessing the reasonableness of the fees, concluding that standard was not applicable in this situation.

The matter proceeded to an evidentiary hearing in February 2021. The Trial Court summarized the evidence as follows:

> Ms. Beth Breetz an attorney with Stites and Harbison, the law firm that represented PNC, testified regarding the fees and costs incurred by PNC in defending the Defendants' lawsuit. She testified that despite the extensive litigation in this case, only four attorneys have been involved in any substantial way in PNCs legal defense; that each attorney had a particular skill set that they brought to the litigation; and that other attorneys were not included because of the amount of

-8-

time that would have to be expended by each additional attorney to become familiar with the litigation. She testified that the fees and costs submitted to the Court were identical to those submitted to PNC and paid by the Trust, and that the fees and costs total $1,001,984.96. Ms. Breetz also testified that Capital Forensics, whose invoices are part of the fees and costs submitted to PNC and paid by the Trust, was retained on behalf of PNC to analyze the Middletons' claims of damages and provide expert trial testimony. Ms. Breetz testified that PNC was billed in the standard manner at a rate lower than the standard rates offered to other clients, and that PNC never voiced any objection to the bills submitted. She testified that the firm's rates are set every year by the firm's management committee and are comparable to other large firms. She testified that in reviewing a publication that lists attorney rates across the nation, and also reviewing rates of other local large law firms involved in separate litigation, the hourly rates of the Stites and Harbison lawyers were neither the lowest nor the highest in this market. A copy of all of the invoices has been filed in the record.

The earliest invoices, in 2007, indicate that three attorneys worked on the litigation at that time and the fees for those attorneys were $360/hr. for the most senior attorney, a Mr. Griffith, $250/hr. for Ms. Breetz and $160/hr. for Mr. Owsley. In 2008, a fourth attorney, Mr. Kleinert, began working on the case at a rate of $160/hr. The rates for the other attorneys all had been adjusted upward by anywhere from $5 to $15 per hour. Those incremental adjustments continued through the years. A review of the records indicates that research and writing duties were primarily assigned to the lawyers with the lower rates. From time to time, other names crop up as having done some minimal amount of work on the case, but the Defendant has raised no specific challenges to these, or in fact any, entries.

Charles Middleton testified at the hearing on behalf of the Defendants, raising several objections to the billing. He asserted that PNC's third-party claims against Parthenon LLC (the investment adviser to the Trust) did not arise from the Defendants' lawsuit and therefore were beyond the scope of the indemnity obligation. He estimated that those fees comprised 30% to 50% of the fees and costs. He challenged the amount of time PNC's counsel spent on preparing for depositions; the number of attorneys who attended the depositions; and the failure to assign "clerical" duties to paralegals. He provided his own cost calculations for what counsel for PNC charged for various deposition preparations which he testified were excessive. Mr. Middleton objected to the hourly rates of PNC's counsel, relying on hourly rates approved in bankruptcy and receivership cases.

Mr. Middleton testified that many of the invoices submitted by counsel for PNC contained "block billing," which made it impossible to determine the time allocated to each of the subjects contained in the billing blocks, and therefore made it impossible to specify those charges which might be excessive. He cited numerous cases in which the courts have reduced the amount of attorney fees based on the inadequacy of documentation that occurs when a firm relies on block billing stating that those cases support reductions of anywhere from 20% to 70%.

In its conclusions of law, the Trial Court reviewed the factors set out in *Mo-Jack Distrib., LLC v. Tamarak Snacks, L.L.C.*, *supra*. Based on these factors, the Court found that the fees claimed by PNC were reasonable. The Court concluded that the amount and character of the legal services rendered were consistent with a high-dollar, multi-year, very complex case worth, potentially, millions of dollars. The Court also noted the Middletons' aggressive litigation of

-10-

the matter, and the potential financial and reputational damage to PNC from an adverse judgment. The Court concluded that PNC reasonably engaged attorneys with top reputations in the community, and that the hourly rates were reasonable given the expertise of those attorneys and the extent and complicated nature of the litigation.

The Trial Court further noted that the Middletons had not identified specific invoices and expenses to which they took exception. The Court found that the block billing entries were sufficiently detailed, in that they described the work to be performed in enough detail to allow a client to know what work was being claimed under each entry. The Court next found that PNC's third-party claim was covered by the Agreement because that claim arose from the Middletons' claims against PNC as trustee. Finally, the Trial Court rejected the Middletons' multiple arguments related to excessive staffing and time charged, finding no evidence that any time or staffing was excessive or unreasonable.

Consequently, the Trial Court entered judgment against the Middletons in the amount of $1,081,293.61. This amount reflects the $1,001,984.96 in legal fees and costs incurred by the Trust in defending the 2007 Action, and $79,308.65 in fees and costs paid by the Trust in prosecuting the indemnity action. The Middletons filed a Notice of Appeal from this judgment. No supersedes bond was filed.

Following entry of the judgment, C.B.&T.[1] sought to collect on the judgment. In the course of these collection efforts, C.B.&T. discovered that Charles Middleton is the trustee and sole beneficiary of a trust established under the last will and testament of his mother, Katharine Jones Smith ("the Smith Trust"). As trustee, Charles Middleton has unfettered discretion to make distributions of any kind to himself, without regard to any other beneficiary. C.B.&T. also noted that, in a separate action, Charles Middleton represented under oath that the corpus of the Smith Trust was entirely his.

C.B.&T. moved pursuant to KRS[2] 386B-5.010(1) to attach and collect that beneficial interest. Because the Smith Trust granted Charles Middleton "uncontrolled discretion" to make distributions of the trust principal to himself, C.B.&T. requested that the Trial Court enter an order to attach his full interest in the Smith Trust and to compel the distribution of the trust assets to satisfy the Judgment. In a Memorandum and Order entered on May 12, 2022, the Trial Court granted C.B.&T.'s motion, attaching the Smith Trust assets and compelling Charles Middleton to turn the assets over to C.B.&T. Charles Middleton

---

[1] Shortly after this filing, C.B.&T. was acquired by Stock Yards Bank & Trust Co. ("Stock Yards"). However, Stock Yards was not substituted as a party to the action below or the appeal. Consequently, we shall continue to refer to the Appellee as "C.B.&T."

[2] Kentucky Revised Statutes.

separately appealed from this Order. Subsequently, this Court directed that the appeals be heard together. Additional facts will be set forth below as necessary.

## II.    Appeal No. 2021-CA-1035-MR

### A. *Denial of Right to Jury Trial*

We first turn to the issues raised in the Middletons' appeal from the Judgment awarding attorney fees to C.B.&T. To begin, the Middletons argue that the Trial Court erred in denying their request for a jury trial to determine the amount of reasonable attorney fees. The Middletons point out that Section 7 of the Kentucky Constitution guarantees that "[t]he ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate[.]" Because the claim for attorney fees arises from a contract – the Agreement, the Middletons contend they were entitled to a jury trial on the issue.

We disagree. Section 7 of the Kentucky Constitution preserves the right to trial by jury as it existed in common law. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 908 S.W.2d 104, 106 (Ky. 1995). Kentucky's common-law does not allow for recovery of attorney fees. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, L.L.C.*, 540 S.W.3d 770, 787 (Ky. 2017). Rather, attorney fees are only recoverable where authorized by statute or a specific contractual provision. *Id.* Furthermore, recovery of attorney fees is grounded in equity, where there is no right to a jury trial. *Mo-Jack*, 476 S.W.3d at 906 (citing *Smith v. Bear, Inc.*, 419

-13-

S.W.3d 49, 59 (Ky. App. 2013), and *Gibson v. Kentucky Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 204 (Ky. App. 2010)).

Rather, as the Trial Court noted, the issue of a reasonable attorney fee is an issue of law for a trial court and not for a jury. *Inn-Grp. Mgmt. Servs., Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky. App. 2002). Reasonableness of an attorney fee is for the trial court to determine, subject only to the abuse of discretion standard. *Superior Steel*, 540 S.W.3d at 787 (citing *Woodall v. Grange Mutual Casualty Co.*, 648 S.W.2d 871 (Ky. 1983)). Because this matter involves only an issue of law, the Middletons were not entitled to submit the issue to a jury.

### B. *Reasonableness of Attorney Fees*

The Middletons primarily argue that the Trial Court abused its discretion in finding that the total amount of attorney fees claimed by PNC was reasonable. An award of attorney fees is within the sound discretion of a trial court and will not be disturbed "[a]bsent a showing of an abuse of that discretion[.]" *Woodall*, 648 S.W.2d at 873. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). More specifically, a trial court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision

-14-

. . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (cleaned up).

### i. *Exclusion of Expert Witness*

The Middletons raise three arguments challenging the Trial Court's determination that the attorney fees were reasonable. First, they contend that the Trial Court abused its discretion by excluding their expert witness on the issue of attorney fees. We disagree. While KRE[3] 702 permits expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue," it does not permit a witness to aid in the determination of a legal issue. *See Gibson v. Crawford*, 259 Ky. 708, 83 S.W.2d 1, 7 (1935) ("The courts never allow a witness to give his conclusion on questions of law . . . ."); and *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky.1991). *See also Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 623-24 (Ky. App. 2003). When the attorney or client seeks to recover an attorney fee from an opposing or third party, the reasonableness of the fee is an issue of law. *Inn-Grp. Mgmt. Servs., Inc.*, 71 S.W.3d at 130. Since the proposed expert testimony related only to the reasonableness of the attorney fees that PNC incurred in defending the Middletons' 2007 Action, the Trial Court properly excluded the testimony.

---

[3] Kentucky Rules of Evidence.

ii.     *Application of Lodestar Test*

Second, the Middletons argue that the Trial Court failed to apply the proper test to determine reasonableness of the attorney fees. As discussed above, the Trial Court analyzed the reasonableness of attorney fees using the *Mo-Jack* factors identified in this Court's prior opinion. The Middletons argue that the Trial Court should have applied the "lodestar" formula in making this determination. This formula was originally adopted in Kentucky to determine attorney fees under the Kentucky Civil Rights Act. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992). An "attorney's fee awarded should consist of the product of counsel's reasonable hours, multiplied by a reasonable hourly rate, which provides a 'lodestar' figure, which may then be adjusted to account for various special factors in the litigation." *Id.* at 826 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). *See also Virgin Mobile U.S.A., L.P. v. Com. ex rel. Com. Mobile Radio Serv. Telecommunications Bd.*, 448 S.W.3d 241, 252 (Ky. 2014). More recently, this Court held that the loadstar method is also applicable to other statutory claims for attorney fees. *Mid S. Cap. Partners, LP v. Adkins*, 626 S.W.3d 688, 691 (Ky. App. 2020).

However, the Court in *Adkins* cited the same "special factors" that were set out in *Mo-Jack. Id.* at 691; *Mo-Jack*, 476 S.W.3d at 910. Although some Federal cases frame these factors slightly differently, the Middletons do not allege

that the Trial Court failed to consider any significant factor.  Moreover, in *Hensley v. Eckerhart*, *supra*, the United States Supreme Court held that the extent of the relief obtained is the most important factor in considering the reasonableness of an award of attorney fees.  *Hensley v. Eckerhart*, 461 U.S. at 438-40, 103 S. Ct. at 1942-43.

### iii.    *Sufficiency of Evidence of Reasonableness*

Thus, we turn to the central question in this appeal:  whether the Trial Court properly considered all relevant factors in determining that the amount of attorney fees incurred by PNC was reasonable.  In this case, the Trial Court relied upon the billing from Stites & Harbison to establish both the hours worked by counsel and the hourly rates charged by the various attorneys.  For the most part, the Middletons did not identify specific items as unreasonable.  Rather, they raised several general objections to certain classes of billed items, as well as the overall reasonableness of the charges.

### a) Third-Party Complaint against Parthenon

The Middletons contend that the Trial Court improperly allowed recovery of attorney fees incurred from PNC's third-party complaint against Parthenon.  But as the Trial Court noted, the Agreement allowed recovery of attorney fees and costs "arising directly or indirectly" from the Middleton's claims against PNC in the 2007 Action.  Given the expansive language in the Agreement,

we agree with the Trial Court that the third-party complaint against Parthenon was an action that arose, at least indirectly, from the Middletons' claims against PNC.

Moreover, Kentucky case law does not require exclusion of those fees. Generally, attorney fees must be apportioned between claims for which there is statutory or contractual authority for an award of attorney fees and those for which there is not. *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 368 (Ky. App. 2007). But where all of the claims arise from the same nucleus of operative facts and each claim is "inextricably interwoven" with the other claims, apportionment of fees is unnecessary. *Id.* (citations omitted).

In the 2007 Action, the Middletons asserted claims against PNC for breach of fiduciary duties allegedly arising from its improper delegation of investment management and failure to supervise properly the investments by Parthenon. The Middletons asserted that these actions caused losses to the Trust's investment portfolio during the period from July 2001 through October 2007. *See Middleton v. PNC Bank*, 2014 WL 5510872, at *2. PNC's third-party complaint sought to recover damages against any breach by Parthenon involving its investment strategy. Thus, the third-party complaint involved the same factual issues, the same legal issues, and was "inextricably interwoven" with the Middletons' claims against PNC. Therefore, the Trial Court was not obligated to apportion fees incurred by PNC in bringing the third-party complaint.

-18-

b) <u>Block Billing</u>

The Middletons next argue that the Trial Court improperly allowed "block billing," which allegedly made it difficult to determine the reasonable amount of time devoted to distinct tasks. Block billing involves identifying more than one task in a single billing entry. *Gibson v. Scott*, No. 2:12-CV-1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) (unpublished). In his testimony, Charles Middleton identified three examples of the "pervasive" block billing in the itemized attorney fees.[4] He did not contend that these entries involved matters that were unrelated to the 2007 Action. Rather, he merely suggested that these entries may be duplicative of other billed items.

The Trial Court analyzed one of these entries, stating that a "typical billing entry (chosen at random from a June 13, 2012, invoice) is representative of the entries found throughout the invoices." That entry is as follows:

> Coordinate research re McCrea exclusion; research same; continue outlining response to Middleton summary judgment motion; teleconference with Parthenon counsel; analyze Stone, Wheeler, and Myles transcripts; outline potential affidavit for Stone and Wheeler; continue drafting summary judgment response; confer with Breetz re deadlines and case management.

---

[4] The Middletons' expert, John Conlon, identified additional examples of block billing in his report. But as noted above, the Trial Court did not allow his testimony or report. The Middletons introduced his report by avowal.

The Stites & Harbison bill, as introduced by Ms. Breetz, showed that the attorney who billed for these tasks billed 6.80 hours at the hourly rate of $260. The other examples of block billing cited by Charles Middleton involved similar descriptions. The Trial Court agreed with the Middletons that there is no method by which to determine the exact minutes expended on each task. However, the Trial Court concluded that the description was sufficient to determine that the work was reasonably related to the claims for which PNC was entitled to recover attorney fees.

We agree. The Middletons assert that the Federal Courts reject block billing as an allowable practice in calculating attorney fees. To the contrary, most Federal Courts have held that block billing is not a prohibited practice. *See Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007); *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006); *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); and *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). In *Hensley*, *supra*, the Supreme Court also stated that plaintiff's counsel "is not required to record in great detail how each minute of his time was expended." *Id.* at 437 n.12, 103 S. Ct. at 1933. "Instead, plaintiff's counsel can meet his burden – although just barely – by simply listing his hours and 'identify[ing] the general

subject matter of his time expenditures.'" *Fischer*, 214 F.3d at 1121 (quoting

*Hensley*, 461 U.S. at 437 n.12).

The party seeking fees has "the burden of providing for the court's

perusal a particularized billing record." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th

Cir. 1991). A trial court may reduce hours where the descriptions lack sufficient

detail to ascertain whether the time expended was reasonable. *See Perry v.*

*AutoZone Stores, Inc.*, 624 Fed. App'x 370, 373 (6th Cir. 2015). A trial court also

has discretion to reduce the allowable hours where the use of block billing in

entries make it impossible for that court to determine the exact amount of non-

compensable time included in the requested hours. *Miller v. Davis*, 267 F. Supp.

3d 961, 997 (E.D. Ky. 2017), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th

Cir. 2019).

In this case, the entries were sufficient to identify the tasks performed

and the subject matter of each attorney's work. We agree with the Trial Court that

C.B.&T. met its initial burden of providing particularized, billing records.

c) Consideration of All Relevant Adjustment Factors

Once the prevailing party provides such a record, "conclusory

allegations that the award was excessive and that . . . counsel employed poor

billing judgment . . . do not suffice to establish that there was error . . . ,

particularly in light of the statements of the district court [explaining the award]

-21-

and our standard of review." *Perotti*, 935 F.2d at 764. *See also Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The Middletons assert that some of these entries may be duplicative. Along similar lines, the Middletons claim that PNC failed to rebut Charles Middleton's testimony about excessive staffing, time charged for particular items, and the hourly rates charged by the respective attorneys.[5]

> The Trial Court rejected these claims, concluding as follows:

> Despite the Middletons' characterization of this case as "not complex," and one that "required no specific, specialized knowledge," this is a case in which the Middletons asserted multi-million dollar misfeasance on the part of PNC, and litigated this case from 2007 until 2015, at every level of the Kentucky Court system, until they ultimately failed to prevail on any issue. The Court believes that it would be a rare client who would not seek out top lawyers to defend such an action, especially as the case went on for a protracted period. The Middletons have not pointed out which entries in the hundreds of pages of invoices they believe support their general claim that multiple attorneys duplicated efforts, with a few exceptions. Nor have they identified entries that they claim the time utilized was excessive for the tasks. The Middletons have identified entries relating to the taking of depositions which they assert show that such

---

[5] The Middletons also contend that the fees charged by Stites & Harbison were excessive because its joint representation of PNC individually and as a Trustee amounted to a conflict of interest. But in the prior appeal, the Middletons raised this alleged conflict, arguing that PNC was not authorized to expend Trust funds to defend claims brought against it individually. The Trial Court held, and this Court agreed, that this issue had been previously litigated in the 2007 Action. Thus, the Middletons' argument was barred by collateral estoppel. *Middleton v. PNC Bank*, 2019 WL 1224621, at *6. For the same reason, we conclude that Middletons cannot use this issue to challenge the reasonableness of the fees incurred.

-22-

> depositions and deposition preparations were overstaffed, and that more junior attorneys should have been utilized for much of the preparation. Again, it was apparent that the Middletons were going to litigate this matter to the bitter and expensive end. The defense absolutely could have been done more cheaply by fewer or different attorneys, or possibly another firm entirely, but that is not the standard the Court is required to employ. The Court cannot overlook the fact the defense of this case by these attorneys practicing in the manner they did, resulted in a complete victory for their client. The standard is whether the attorneys' fees and costs were reasonable in light of all the circumstances of the case. The Court finds that they were.

This Court finds that it is unnecessary to improve upon the Trial Court's analysis of the relevant issues.

The Trial Court applied the proper standard, first determining the total number of hours expended and the hourly rates charged. The Court concluded that the billing entries were sufficiently detailed and related to the claims for which attorney fees were sought. The Middletons made only general objections to many of these entries, which the Trial Court considered and rejected. In addition, the Trial Court properly considered the reasonableness of the hourly rates charged by Stites & Harbison, rather than adopting the "community rate" asserted by the Middletons.

The Trial Court then considered the bills in light of all relevant factors, determining that the hours worked and the rates charged were reasonable under the circumstances. The Trial Court particularly focused on the degree of

-23-

success that PNC's attorneys obtained in the litigation. Since none of these findings were clearly erroneous, the Trial Court did not abuse its discretion in concluding that the fees were reasonable.

### III.     Appeal No. 2022-CA-0675-MR

The second appeal involves the post-judgment proceedings to enforce the award of attorney fees to C.B.&T. Although both Charles Middleton and the Estate of Lawrence Middleton are the Appellants in this appeal, the Trial Court's Order only affects the interests of Charles Middleton. Unless the context requires otherwise, we shall refer to him separately as Charles Middleton.

As noted above, Charles Middleton is the lifetime beneficiary and sole trustee of the Smith Trust.[6] C.B.&T. moved to attach Charles Middleton's beneficial interest in the Smith Trust and to compel him as Trustee to distribute the trust corpus to satisfy the judgment. Charles Middleton argues that the Trial Court lacked subject-matter and personal jurisdiction over the Trust, the trustee and remainder beneficiaries were indispensable parties, and Charles Middleton had disclaimed his authority as trustee to make unrestricted distributions from the Trust

---

[6] The Smith Trust originally designated Charles and Lawrence Middleton as co-trustees. Upon Lawrence Middleton's death, Charles Middleton became sole trustee. The Smith Trust also established separate trusts for Charles Middleton and Lawrence Middleton. C.B.&T.'s motion only sought to attach the assets of the trust of which Charles Middleton was a beneficiary.

corpus.  For these reasons, he argues that the Trial Court erred by compelling him to make distributions to satisfy the Judgment for attorney fees.

*A.  Subject-Matter Jurisdiction*

Charles Middleton first argues that the Trial Court lacked subject-matter jurisdiction over the Trust.  KRS Chapter 386B contains a number of statutes that vest exclusive jurisdiction over trust matters in either Circuit Court or District Court.  *See Hauber v. Hauber*, 600 S.W.3d 204, 208 n.9 (Ky. 2020).  Circuit Court has exclusive jurisdiction to apply *cy pres* doctrine.  KRS 386B.4-130(3).  District Court has exclusive jurisdiction over matters involving termination of a trust or removal of a trustee, KRS 386B.8-180(6), and matters relating to the office of trustee.  KRS 386B.7-100.  *See also PNC Bank, Nat'l Ass'n v. Edwards*, 590 S.W.3d 818 (Ky. 2019).  District Court also has exclusive jurisdiction over modification or termination of certain trusts.  KRS 386B.4-110(7), KRS 386B.4-120(4), KRS 386B.4-140(5), KRS 386B.4-160, KRS 386B.4-170(3).

In addition, KRS 386B.2-030(1) provides that the "District Court and Circuit Court shall have concurrent jurisdiction of any proceedings in this Commonwealth brought by a trustee or beneficiary concerning any trust matter[.]"  However, this is not a proceeding brought by a trustee or beneficiary, but an action

-25-

brought by a creditor against a trust beneficiary. But KRS 386B.2-030(2) further provides:

> If a proceeding is initially brought in District Court concerning any trust matter, the jurisdiction of the District Court shall become exclusive with respect to such matter unless, within twenty (20) days of receipt of notice of such proceeding, a party files an action in Circuit Court relating to the same trust matter, in which event the District Court shall be divested of jurisdiction and the Circuit Court shall have exclusive jurisdiction over such action.

Recently, the Kentucky Supreme Court interpreted this section in *PNC Bank v. Edwards*, *supra*. In that case, Boyd, as attorney-in-fact for the trust settlor, Hager, removed PNC Bank as trustee and appointed CB&T as successor trustee. PNC Bank provided its statutory notice of the change in trustee and of the settlor's right to object to any acts or omissions disclosed in the trust information. In response, Boyd and Hager sent PNC Bank a list of objections to the statutory notice, including allegations of breach of fiduciary duty by PNC Bank. *Id.*, 590 S.W.3d at 820.

PNC Bank filed a petition in District Court to approve its statutory notice. Boyd and Hager then filed an action in Circuit Court against PNC Bank on their breach-of-fiduciary-duty claims. *Id.* After the Circuit Court denied PNC Bank's motions to dismiss based on subject-matter jurisdiction, PNC Bank sought a writ of prohibition against the Circuit Court judge. Ultimately, the Supreme

Court concluded that objections to the statutory notice must be brought in District Court. *Id.* at 821 (citing KRS 386B.8-180). After the objections were brought in District Court, that court had exclusive jurisdiction over breach-of-trust claims raised as part of a proceeding brought under KRS 386B.8-180. *Id.* at 822-23.

However, the Supreme Court clarified that:

> This opinion should not be read as holding that circuit courts have no jurisdiction to decide breach of trust or fiduciary duty claims of the type made by Boyd. If, for example, she had filed her action in circuit court prior to removing PNC as trustee, or prior to PNC's filing its petition in district court, the circuit court's jurisdiction would have been proper under the concurrent jurisdiction provisions of KRS 386B.2-030.

*Id.* at 823.

In the current case, the first question before this Court is whether C.B.&T.'s garnishment petition against the Smith Trust falls within one of exclusive-jurisdiction provisions of KRS Chapter 386B or the concurrent jurisdiction of both Circuit and District Courts. Charles Middleton argues that the attachment order effectively requires termination of the Smith Trust, insofar as it requires the trustee to pay out the majority of the trust assets. Consequently, he maintains that only the District Court has jurisdiction. KRS 386B.4-140. We disagree.

C.B.&T. filed its motion pursuant to KRS 386B.5-010, which provides:

To the extent a beneficiary's interest is not subject to a spendthrift provision, the court may authorize a creditor or assignee of the beneficiary to reach the beneficiary's interest by attachment of present or future distributions to or for the benefit of the beneficiary or other means.

Neither this statute nor any other provision of subchapter 5 of KRS 386B assigns exclusive jurisdiction to the District Court over attachment or garnishment proceedings. Furthermore, the Circuit Court is a court of general jurisdiction, while the District Court is a court of limited jurisdiction that may be exercised only under statutory limits and prescriptions. *Hisle v. Lexington-Fayette Urb. Cnty. Gov't*, 258 S.W.3d 422, 433 n.7 (Ky. App. 2008) (citing KY. CONST. § 109). The Trust Code preserves this jurisdictional distinction – assigning concurrent jurisdiction over trust matters to Circuit and District Court, except for specific matters over which the District Court has exclusive jurisdiction.

Consequently, we conclude that attachment proceedings are subject to the provisions of KRS 386B.2-030(2) and may be brought in either District or Circuit Court. District Court has exclusive jurisdiction only when termination of the trust or removal of the trustee is sought as a remedy. Here, C.B.&T. did not seek termination or removal, and Charles Middleton merely argues that termination of the Smith Trust may result from attachment of the trust corpus. We conclude that this possibility is not sufficient to divest the Circuit Court from jurisdiction over the proceeding.

-28-

At oral argument, Charles Middleton also asserted that C.B.&T. was required to bring its garnishment petition against the Smith Trust in District Court and then seek removal of the petition to Circuit Court. But as explained in *PNC Bank v. Edwards*, *supra*, KRS 386B.2-030(2) does not prohibit a party from bringing a concurrent-jurisdiction claim in Circuit Court. In such cases, the statute only invests exclusive jurisdiction where the action was originally filed in District Court and no action was filed in Circuit Court within 20 days of the filing of such action. 590 S.W.3d at 823. Since C.B.&T. never filed its garnishment petition in District Court, the Circuit Court properly exercised jurisdiction over the matter.

## B. Personal Jurisdiction/Indispensable Parties

Second, Charles Middleton notes that C.B.&T. did not name him separately in his capacity as Trustee of the Smith Trust. He also notes that C.B.&T. did not name the remainder beneficiaries of the Smith Trust. Charles Middleton contends that these were indispensable parties to the action. Consequently, he argues that the Trial Court lacked personal jurisdiction to enter the orders attaching the assets of the Smith Trust and directing Charles Middleton to disperse trust assets.

CR[7] 19.01 provides:

> A person who is subject to service of process, either
> personal or constructive, shall be joined as a party in the

---

[7] Kentucky Rules of Civil Procedure.

action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If a person described in CR 19.01 cannot be made a party, a Trial Court may dismiss an action for failure to join an indispensable party. *Id.* Because personal jurisdiction presents a question of law, it is subject to *de novo* review. *Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011) (citing *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007)).

We agree that, ordinarily, the beneficiaries and trustee of a trust are necessary parties to an action seeking to avoid a trust. *Gripshover v. Gripshover*, 246 S.W.3d 460, 466 (Ky. 2008). But in this case, Charles Middleton was already a party to the proceedings. C.B.&T. was not required to name him separately to attach his interest as a beneficiary. Rather, the Trial Court had personal jurisdiction to attach Charles Middleton's beneficial interest in the Smith Trust. *See Tyler v. Smith*, 272 S.W.2d 454, 455 (Ky. 1954).

Charles Middleton also argues that his descendants, as future beneficiaries of the Smith Trust, were necessary parties to the action. But as discussed further below, the Smith Trust granted him unfettered discretion to

-30-

distribute any and all portions of the Trust income and corpus to himself during his lifetime. Consequently, the interests of any future beneficiaries of the Smith Trust are merely contingent and speculative at this point and will not be materially impaired by the attachment of Charles Middleton's beneficial interest. *See Kentucky Ass'n of Fire Chiefs, Inc. v. Kentucky Bd. of Hous., Bldgs. & Const.*, 344 S.W.3d 129, 134 (Ky. App. 2010).

C.B.&T. also sought to compel Charles Middleton, as Trustee of the Smith Trust, to distribute trust assets to satisfy the Judgment. While Charles Middleton was not named separately in his capacity as Trustee of the Smith Trust, we conclude that was not necessary under the facts in this case. First, Charles Middleton did not raise C.B.&T.'s failure to name him in his capacity as Trustee in his objections to C.B.&T.'s motion. He only objected to C.B.&T.'s failure to name the future beneficiaries of the Smith Trust. Likewise, in his Report of Distribution and Settlement of the Trust, Charles Middleton made a general objection to personal jurisdiction in his capacity as Trustee. However, he did not assert that the Trustee was a necessary or an indispensable party. Because Charles Middleton appeared in his capacity as Trustee and did not raise the issue by means of a motion pursuant to CR 12.02 or CR 19.02, he waived any objection to personal service in that capacity. *See also Brock v. Saylor*, 189 S.W.2d 688, 690,

300 Ky. 471, 474 (Ky. 1945), and *Cabinet for Hum. Res. v. Kentucky State Pers. Bd.*, 846 S.W.2d 711, 714 (Ky. App. 1992).

And second, as discussed further below, the Smith Trust granted Charles Middleton the sole discretion as Trustee to distribute assets to himself. In such cases, the law recognizes that the trustee is really the absolute owner of the trust assets. *Alexander v. Hicks*, 488 S.W.2d 336, 338 (Ky. 1972). Because Charles Middleton was a party to the action and the *de facto* owner of the assets of the Smith Trust, C.B.&T. was not required to name and serve him separately as Trustee.

## C. Interpretation of Trust Powers

Finally, the Middletons argue that the Trial Court erred in its interpretation of the Smith Trust to allow attachment of Charles Middleton's beneficial interest. As previously mentioned, the Smith Trust grants Charles Middleton, as Trustee, the uncontrolled discretion to pay any or all of the income or principal of the Trust to himself, providing as follows:

> B. My Trustees are authorized at any time and from time to time to pay such part or all of the income and principal thereto from each of the respective trust estates to themselves or among their children or descendants in such proportions as the Trustees in their uncontrolled discretion shall deem best, taking into consideration any other means of support they or any of them may have. Any income not paid out or used currently shall be accumulative and added to the principal of the respective trust.

Because the Smith Trust allows Charles Middleton to distribute any part or all of income or principal, C.B.&T. argued that his beneficial interest was subject to attachment. In response, Charles Middleton pointed to a February 28, 2005, "disclaimer" that he and his brother signed, stating:

> We hereby disdain, renounce and forever refuse to accept the power granted to each of us as Trustees, under Article V, subsection B, which allows us, as Trustees, to encroach and pay principal of the two Trusts to ourselves as beneficiaries. This renunciation of this power is binding on any successor Trustee.

Based on this disclaimer, Charles Middleton argued that he no longer had unfettered discretion as Trustee to pay out income or corpus of the Smith Trust to himself. C.B.&T. responded that Charles and Lawrence Middleton could not unilaterally alter the terms of the Smith Trust while still accepting the position as Trustee and their respective beneficial interests. The Trial Court agreed, concluding that the disclaimer was ineffective because it did not disclaim his beneficial interest. The Court further noted that the RESTATEMENT (SECOND) OF THE LAW OF TRUSTS section 102(4) provides that a trustee cannot accept title to the trust property but disclaim part of the duties of the trustee. Consequently, the Trial Court concluded that the disclaimer did not prevent attachment of Charles Middleton's beneficial interest.

Charles Middleton maintains that his disclaimer met the requirements of KRS 394.610 and was sufficient to disclaim the powers granted to him as

Trustee under the Will of Katherine Smith.  However, that statute merely allows a person to "disclaim in whole or in part the right of succession to any property or interest therein, including a future interest[.]"  The disclaimer does not purport to disclaim Charles Middleton's interest as beneficiary in the Smith Trust.

Moreover, a Trustee cannot accept title to the trust property in part and disclaim in part.  Comment f to section 102 of the RESTATEMENT (SECOND) OF TRUSTS specifies that "[i]f a trustee manifests an intention to accept a trust in part and to disclaim in part, this will have the effect of an acceptance of the whole.  If the trustee accepts the trust as to a part of the trust property, this is an acceptance of the trust of the whole trust property."[8]  As a result, we agree with the Trial Court that the disclaimer is not effective to restrict the attachment of Charles Middleton's interest in the Smith Trust.[9]

As the last part of his final argument, Charles Middleton claims that the Smith Trust has a spendthrift provision that limits it from being attached.  The Trust Code defines a spendthrift trust as "a trust in which by the terms of the

---

[8] *See also* RESTATEMENT (THIRD) OF TRUSTS § 35 (2003) (providing for acceptance or renunciation of trusteeship).

[9] C.B.&T. also points out that, in a 2017 action for legal separation from his wife, Charles Middleton identified the entire corpus of the Smith Trust as his separate, nonmarital property. C.B.&T. argues that Charles Middleton is estopped from relying on the disclaimer when he previously made sworn statements to the contrary.  Since we have concluded that the disclaimer was not effective to renounce a portion of the powers granted to the Trustee under the Smith Trust, we need not reach this issue, even though it may have merit.

instrument creating it a valid restraint on the voluntary and involuntary alienation of the interest of a beneficiary is imposed." KRS 386B.5-030(5) limits the reach of a creditor to attach a beneficial interest in a spendthrift trust if the trustee's discretion to make distributions for the trustee's own benefit is "limited by an ascertainable standard[.]"

Charles Middleton concedes that the Smith Trust does not contain an express, spendthrift provision, but he notes that one may be implied "if the instrument creating the trust manifests an intention to create a spendthrift trust." *See* KRS 386B.5-030(3). Although the Smith Trust affords the Trustee "uncontrolled discretion" to pay out all income or principal, that discretion requires that Trustee to "tak[e] into consideration any other means of support they or any of them shall have." Charles Middleton contends that this language is sufficient to imply an ascertainable standard that limits his discretion as Trustee.

We disagree. KRS 386B.1-010(2) defines "ascertainable standard" to mean "a standard relating to an individual's health, education, support, or maintenance within the meaning of 26 U.S.C.[10] sec. 2041(b)(1)(A) or 26 U.S.C. sec. 2514(c)(1), as amended[.]" The Smith Trust grants the Trustee "uncontrolled discretion" to pay out income or principal to either himself or his descendants. The following line merely directs the Trustee to "tak[e] into consideration" those

---

[10] United States Code.

persons' other means of support. But it does not subject the Trustee's discretion to any defined limitations relating to health, education, support, or maintenance. Therefore, we agree with the Trial Court that Charles Middleton's beneficial interest was subject to attachment to satisfy C.B.&T.'s judgment.

## IV. Conclusion

In the first appeal, we affirm the Trial Court's judgment awarding attorney fees to C.B.&T. The Trial Court properly held that the Middletons were not entitled to a jury trial to determine the reasonable amount of attorney fees. The Trial Court properly excluded the Middletons' expert witness because the matter involved a question of law, not of fact. The Trial Court applied the correct test for determining that the attorney fees were reasonable. C.B.&T. provided billing statements containing the hours worked and rates charged by Stites and Harbison. Those statements were sufficiently detailed to establish the nature and compensability of that work.

The Trial Court also properly allowed attorney fees for the third-party claim against Parthenon because those claims arose from the Middletons' claims against PNC, and they were inextricably intertwined with PNC's defense of the Middletons' claims. The Trial Court considered the Middletons' objections, but concluded that they did not warrant a downward adjustment of attorney fees. Considering the degree of success that PNC achieved in the 2007 Action, we

conclude that the Trial Court did not abuse its discretion in awarding C.B.&T. the full amount of attorney fees.

In the second appeal, we conclude that the Trial Court had subject-matter jurisdiction over C.B.&T.'s claim to attach Charles Middleton's beneficial interest in the Smith Trust. We further conclude that the Trial Court properly exercised personal jurisdiction over that interest, and that Charles Middleton was properly before the Court in his capacity as Trustee. Finally, the Trial Court correctly interpreted the language of the Smith Trust as allowing the attachment of Charles Middleton's beneficial interest.

Accordingly, we affirm the August 3, 2021, Memorandum and Order of the Jefferson Circuit Court awarding attorney fees to C.B.&T; and the May 12, 2022, Memorandum and Order of the Jefferson Circuit Court granting C.B.&T.'s motion to attach the corpus of the Smith Trust and compelling Charles Middleton as Trustee to distribute the corpus of the Smith Trust to satisfy C.B.&T.'s judgment.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS:

Charles G. Middleton, III
Louisville, Kentucky

Mark G. Hall
Louisville, Kentucky

BRIEFS FOR APPELLEES:

Edward H. Stopher
Earl L. Martin III
Louisville, Kentucky

David Cantor
Louisville, Kentucky

David Tachau
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Edward H. Stopher
Louisville, Kentucky